Court Case No. 19-1864
MOTION TO RECALL THE MANDATES AND REMAND TO BIA

RECEIVED

MAR 1 7 2025

BY: U.S. COURT OF APPEALS

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

### SAMUEL KINUTHIA GICHARU,

### PLAINTIFF, APPELLANT

v.

### DONNA CARR, in her capacity as Chief Clerk of the Board of Immigration Appeals; JAMES MCHENRY, in his capacity as Director of the Executive Office for Immigration Review; MICHAEL E. HOROWITZ, in his capacity as Inspector General, Civil Rights & Civil Liberties Complaints, U.S. Department of Justice,

### DEFEEDANTS, APPELLEES

**MOTION TO RECONSIDER MOTION TO RECALL THE MANDATE.
MOTION TO CONSOLIDATE MOTIONS TO RECALL MANDATE FOR 23-1818, 21-1343, 19-1864, 17-1455, 16-2520, 15-2528.
MOTIONS TO RECALL MANDATE 23-1818, 21-1343, 19-1864, 17-1455, 16-2520, 15-2528 IN LIGHT OF THE RECENT #ME TOO MOVEMENT AWARENESS-SURVIVORS' WOMEN FINDINGS; HUMANITARIAN, JUSTICE AND OTHER GROUNDS HERE IN.**

For the Petitioner-Pro-se,
Samuel Kinuthia Gicharu
116 Midland Street,
Lowell, MA 01851
Phone: (978) 761-5214
Email: igk532@gmail.com

Court Case No. 19-1864
MOTION TO RECALL THE MANDATES AND REMAND TO BIA

In Hall v. Hall (2018), the Supreme Court ruled that consolidated civil actions under Rule 42(a) retain their separate identities; Rule 42(a) of the Federal Rules of Civil Procedure (FRCP) allows a court to order consolidation if actions involve common questions of law or facts as in this motion to recall Mandates. The court cannot make a merit determination on just one 23-1818, per its March 10th 2025 decision- is improper, as the cases involve the same parties and facts, to streamline the process and avoid duplication and thus the court should have construed per that decision "in the body of the motion, makes reference to past appeals in this court" as motion or request to consolidate; the court has to make a merit determination for all 23-1818, 21-1343, 19-1864, 17-1455, 16-2520, and 15-2528 in consolidation as the motion to recall inferred; Just as this court consolidated case 17-1455, 16-2520 Sua Sponte, this court has shown a precedent to not need consolidation invoked via a motion. Consolidation can prevent different judges from reaching conflicting decisions on the same issue, It can promote judicial economy and simplify the administration of justice.

Justice Brett Kavanaugh- Dr. Christine Blasey Ford is the precedent and standard the motion to recall Mandate articulate- is what this court should follow; when FGM allegations/evidence are/were brought forward, they should be taken seriously, contrary to the BIA 3-8-2013 removal order. The 2013 FGM allegation/evidence dismissed by the BIA 2013 order was true, and the physical

Court Case No. 19-1864
MOTION TO RECALL THE MANDATES AND REMAND TO BIA

evidence collaborating FGM was established in 19-1864- thus another reason why

motion to recall Mandates has to be consolidated-the BIA 3-8-2013 is the reasons

for all the cases litigations 23-1818, 21-1343, 19-1864, 17-1455, 16-2520, and 15-

2528. The BIA 3-8-2013 removal order nonfactual assertion (quoting BIA removal

order): " We are not persuaded that the co-respondent's 'had relevant evidence

buried inside her that was not triggered by traditional conversation and interviews'

regarding her own FGM experience," this forms a prima facie evidence, that the

BIA was not focused on whether the FGM revelation in 2013 'persuaded' the BIA

if the FGM is material or eligible for equal tolling-a legal analysis in line with BIA

responsibility, but BIA was focused on evaluating medically or psychological of

the survivors' women- the co-respondent health- out of line -BIA is not a medical

expert.

A motion to recall Mandate finds its support in the desire to reach a just

result. "The recall of an appellate mandate to avoid injustice is a continuation, in

the appellate sphere, of a deeply rooted equity jurisprudence." Greater Boston

Television Corp. v. FCC, 463 F.2d 268, 279 (D.C. Cir. 1971), cert. denied, 406

U.S. 950 (1972). To say that courts exist to resolve disputes tell only half the story,

for courts exist to resolve disputes correctly. Allowing manifestly unjust results to

stand uncorrected also erodes public faith in the judicial process and renders this

court's judges to compromised integrity, which will haut conscious for ever and

Court Case No. 19-1864
MOTION TO RECALL THE MANDATES AND REMAND TO BIA

ever.

The classic formulation of the term rule found in Bronson v. Schulten: 104

U.S. 410 (1881) established a clumsy and arbitrary balance between the policies of

finality and correctness. In that vein, the recalls should be used only in unique

instances that cannot be remedied by less drastic measures. There are substantial

injustice results when a mandate based on an outmoded law or recent revealed

ME-TOO movement new findings about survivor women state of mind in accurate

facts binds a party; here, no other modes of relief can correct these injustices. The

above mandates are not valid when they affirm and stem from an illegal BIA 2013

order of removal. The principles of res judicata normally prevent a party from

attacking a valid and final judgment. Commissioner v. Sunnen, 333 U.S. 591, 597

(1948). See generally 1B MooRE's FEDERAL PRAc-TiE 0.405[1] (2d ed. 1974).

Here, the BIA 2013 order for removal is invalid. The court has the duty to Recall

of Mandate as the mandate works a substantial injustice upon a party, and (ii) the

injustice cannot otherwise be remedied, as, for instance, under Federal Rule of

Civil Procedure or by re-litigation under an exception to res judicata doctrine as

mentioned, BIA and this court 19-1864 has affirmed Time and numeric bar to file

a motion to re-open with BIA (And that fact further support why consolidation is

valid); thus, Pursuant to 8 U.S.C 1252 (a) (2) (D) the court has jurisdiction to

review BIA questions of law Pursuant to Rule 15, Fed. R,App. Raised at the

Court Case No. 19-1864
MOTION TO RECALL THE MANDATES AND REMAND TO BIA

Recall.

Under the Supreme Court's Rule 45 (Seg., Rule 45: Process: Mandates:

paragraphs 2 & ) recognize, either by rule or through judicial interpretation, that:

(1) mandates can be recalled; (2) Courts authority to recall mandates without the

aid of court rules; (3) mandates can be recalled "to prevent injustice"; and (4)

mandates can be recalled "upon showing of good cause": Mandates can be recalled

by specific rules: See, 5th Cir. R. 15; 8th Cir. R. 18; authority to recall mandates

even without the aid of such specific court rules: See, e.g., American Iron & Steel

Inst. v. EPA, 560 F.2d 589, 592-94 (3d Cir. 1977), cert. denied, 435 U.S. 914

(1978); Greater Boston Television Corp. v. FCC, 463 F.2d 268, 276-77 (D.C. Cir.

1970), cert. denied, 406 U.S. 950 (1972). Also see, generally: Wright & A. Miller,

Federal Practice and Procedure: Civil § 3938 (1969); Mandates can be recalled

"To prevent injustice": See, 5th Cir. R. 15; 8th Cir. R. 18. See Aiphin v. Henson,

552 F.2d 1033, 1035 (4th Cir.), cert. denied, 434 U.S. 823 (1977); Aerojet-General

Corp. v. American Arb. Ass'n, 478 F.2d 248, 254 (9th Cir. 1973; Greater Boston

Television Corp. v. FCC, 463 F.2d 268, 277 (D.C. Cir. 1971), cert. denied, 406

U.S. 950 (1972); cf. Riha v. IT&T Corp., 533 F.2d 1053, 1055 (8th Cir. 19 76)

(time set by district court for interest to start running not sufficiently unjust to lead

to a recall); Mandates can be recalled "Upon showing of good cause": - See,

Aerojet- General Corp. v. American Arb. Ass 'n, 478 F.2d 248, 254 (9th Cir.

Court Case No. 19-1864
MOTION TO RECALL THE MANDATES AND REMAND TO BIA

1973); Greater Boston Television Corp. v. FCC, 463 F.2d 268, 277 (D.C. Cir.

1971), cert. denied, 406 U.S. 950 (1972); Rasheed v. Gonzales, 190 Fed. Appx.

676, 679-80 2006 (10th Cir. 2006). See generally: David G. Seykora, Recall of

Appellate Mandates in Federal Civil Litigation, Cornell Law Review, Volume 64

Issue 4, Article 5, page 706, April 1979; 253 F.2d 114 (6th Cir. 1958).

MOTION TO RECALL THE MANDATES AND REMNAD TO BIA

## Table of Contents

1. MOTION TO RECALL THE MANDATE IN LIGHT OF THE RECENT #ME TOO MOVEMENT AWARENESS- SURVIVORS' WOMEN FINDINGS; HUMANITARIAN, JUSTICE AND OTHER GROUNDS HERE IN ...................... 1
2. Table of Contents ................................................................ 2
3. A PETITION FOR RECALL THE MANDATE AND A REMNAD TO BOARD OF IMMIGRATION APPEALS (BIA OR BOARD) .......................... 8
4. RELEVANT PROCEDURAL HISTORY ............................................ 11
5. ARGUMENT ....................................................................... 13
6. CERTIFICATE OF COMPLIANCE ................................................. 38
7. CERTIFICATE OF SERVICE ..................................................... 39
8. S IGNATURE ...................................................................... 39

## Appendixes enclosed:

➢ BIA 3-8-2013 removal order

➢ 15-2528 Gicharu, et al v. Lynch decision

➢ 16-2520 Gicharu, et al v. Sessions

➢ 17-1455 Gicharu, et al v. Sessions

➢ 19-1864 Gicharu v. Carr, et al

➢ 21-1343 Kinuthia, et al v. Garland

➢ 23-1818 Gicharu v. Moniz

➢ U.S. District Court District of Oregon (Portland (3)) CIVIL DOCKET FOR CASE #: 3:24-cv-00349-AR. The Magistrate Judge Jeff Armistead ORDER

➢ EMAIL filed on 10-5-2023 by my attorney Michael Kaplan, Esq, petitioning the BIA a joint motion to re-open

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

## A PETITION FOR RECALL THE MANDATE AND A REMNAD TO BOARD OF IMMIGRATION APPEALS (BIA OR BOARD)

Pursuant to Federal Rules of Appellate Procedure 27 and 41, Petitioner moves this Court to recall the mandate in this case in light of the #Me Too movement findings- survivors' women often don't come forward about sexual assault awareness recent modern phenomenal 'Me Too Movement' accepting women's allegations of sexual harassment or sexual assault at face value.

Following the Me-Too movement awareness, Supreme Court nomination of Justice Brett Kavanaugh was thrown into a tailspin following the emergence of previously unknown sexual assault allegations. Dr. Christine Blasey Ford, who had known Justice Kavanaugh years earlier, accused him of sexually assaulting her at a social gathering when they were both high school students, but she had kept silent out of fear of being dismissed or blamed. Dr. Christine Blasey Ford got her hearing at the confirmation hearing of Justice Brett Kavanaugh, even after coming forward more than 30 years later-is precisely what we requested at the BIA in 2013 -see the BIA removal order- a survivors' women hearing; Considering all these, I the Petitioner request the court to recall its mandate on all these other interrelated cases:

| Case Number Title | Opening Date | Party | Mandate issue date | Originating Case Number Origin |
|---|---|---|---|---|
| 15-2528 Gicharu, et al v. Lynch | 12/14/2015 | Samuel Kinuthia Gicharu | MANDATE issued 07/11/2016 | BIA-1 : A097-849-018 Board of Immigration Appeals (BIA) |

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

| 16-2520 Gicharu, et al v. Sessions | 12/23/2016 | Samuel Kinuthia Gicharu | MANDATE issued 05/04/2018 | BIA-1 : A097-849-018 Board of Immigration Appeals (BIA) |
|---|---|---|---|---|
| 17-1455 Gicharu, et al v. Sessions | 05/03/2017 | Samuel Kinuthia Gicharu | MANDATE issued 05/04/2018 | BIA-1 : A097-849-018 Board of Immigration Appeals (BIA) |
| 19-1864 Gicharu v. Carr, et al | 09/10/2019 | Samuel Kinuthia Gicharu | MANDATE issued 1-26-2022 | 0101-1 : 1:18-cv-10927-IT District of Massachusetts, Boston |
| 21-1343 Kinuthia, et al v. Garland | 04/27/2021 | Samuel Kinuthia Gicharu | MANDATE issued 08/16/2022 | BIA-1 : A097-849-018 Board of Immigration Appeals (BIA) |
| 23-1818 Gicharu v. Moniz | 10/03/2023 | Samuel Kinuthia Gicharu | MANDATE issued 08/27/2024 | 0101-1 : 1:23-cv-11672-MJ District of Massachusetts, Boston |

Similarly, to Stay of the Court's Mandate, this Court can and should recall its Mandate to allow me to seek additional relief and to administer justice. It follows that my deportation and removal from the USA, that was executed by U.S. Immigration and Customs Enforcement (ICE) on 8-3-2023, that formed the basis of this litigation was not legally executed with a valid constitutional sound removal order, a gross miscarriage of justice where the removal order lacked a valid legal basis and sound reasoned judgement at the time of my removal-a collateral attack of the final order of removal based on a gross miscarriage of justice, and a collateral attack based on an alleged due process violation; with my 8-3-2023 removal from the USA, this court has now the jurisdiction to review my BIA 2013 removal order challenges explained here in; I the Petitioner request the court to recall its mandates in part on those and other several grounds elaborated

below.

The first reason why this court should recall the above mandates is the egregious abusive Board of Immigration Appeals (BIA or Board) hubris that runs counter to the 'Me Too Movement' recent findings; BIA uninformed attack of survivors women, excessive pride psychoanalysis editorially, psychological analysis generalized, non-concrete and non-particularized, illegal commentary advisory and illegal psychoanalysis appraisal of survivors petitioner's co-respondent's medical health, which is at the heart, key part and the material part of the BIA removal order; that, (quoting BIA removal order): " We are not persuaded that the co-respondent's 'had relevant evidence buried inside her that was not triggered by traditional conversation and interviews' regarding her own FGM experience," this is counter to the recent findings awareness by the 'Me Too Movement', and thus BIA big-headedness editorial, rendered the removal order illegal, unconstitutional and lacking of the care and due process required by the constitution.

The BIA psychoanalysis editorially never rested on factual finding, depth insight, expert medical or psychological expert, and had no room in a removal order and is against the 'Me Too Movement' accepting women's allegations of sexual harassment or sexual assault at face value. The BIA hubris thus foreclosed relevant asylum testimony germane to my petition. The BIA pomposity

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

psychological analysis evaluation, arrogance psychoanalysis of survivor co-respondent's medical health and state of mind should be left to experts; it rendered the BIA removal order invalid.

As we have recently learned, via the 'Me Too Movement'; and these facts were unavailable in 2013 when BIA, issued its, self-importance psychoanalysis of co-respondent's medical health forming the basis of the removal order, Women often don't come forward about sexual assault due to a complex mix of reasons including fear of retaliation, disbelief, shame, blame-shifting, concerns about their credibility, the potential for social isolation, and a lack of faith in reporting systems, all of which the #MeToo movement aims to address by creating a space where survivors feel empowered to share their experiences; however, it's important to remember that not all women who experience sexual assault will come forward, even with the support of the movement, due to the deeply personal nature of such experiences and individual circumstances.

## RELEVANT PROCEDURAL HISTORY

On 3-8-2013, the BIA issued the enclosed unconstitutional removal order in question. BIA order on Page 2 of the removal order has the egregious abusive BIA hubris attack on survivors' women- the co-respondent beneficiary, that runs counter to the 'Me Too Movement', quoting BIA: "We are not persuaded that the co-respondent's 'had relevant evidence buried inside her that was not triggered by

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

traditional conversation and interviews' regarding her own FGM experience..."

     To make matter worse, I did not receive that BIA order of removal, which, that fact alone, should have been grounds to grant relief by this court; however, this court prevented justice, in case 19-1864, opinion page 11 by declaring: " In sum, Gicharu's request that we compel the BIA to "rescind" the final order of removal necessarily rests on a contention that something occurred in connection with the issuance of that order that renders it inequitable to leave in place." This court seems to want to disregard justice and explain away any injustice.

     On 02/23/2018, this court affirmed the BIA denial of motion to reopen in case Nos. 16-2520, 17-1455, concluding: "The BIA did not abuse its discretion in denying petitioners' motion to reopen."

     Again, on 4-26-2022, this court also affirmed the BIA denial of motion to reopen: "Further, even in the absence of this waiver, we would find no abuse of discretion in the BIA's conclusion that the motion to reopen was also time-barred. In Gicharu v. Sessions, Nos. 16-2520 & 17-1455, 2018 WL 11339147, at *2 (1st Cir., Feb. 23, 2018), we rejected petitioners' equitable tolling argument, and under the law of the case doctrine, we will not revisit that question. See Enwonwu v. Gonzales, 232 F. App'x 11, 14 (1st Cir. 2007)."

     The mandates I'm requesting to be recalled were issued on the dates indicated in the table above.

# ARGUMENT

The enlightening findings of the "me too movement" key reasons why women may not come forward:

- Fear of not being believed: Many women worry that their accusations will not be taken seriously, especially if the perpetrator is in a position of power or is well-respected.

- Fear of reprisal: Concerns about losing their job, damaging their reputation, or facing social backlash from friends, family, or colleagues can deter women from reporting assault.

- Self-blame: Internalized beliefs that they somehow contributed to the assault can prevent women from speaking out.

- Shame and embarrassment: The stigma associated with sexual assault can make women feel ashamed to disclose their experiences.

- Lack of support systems: Not having a supportive network or access to resources to navigate the reporting process can be a barrier.

- Fear of the legal process: Concerns about a lengthy, stressful legal process and the possibility of facing a hostile legal environment can deter women from reporting

It is import that this court recall its mandate, as it is the sole means for we the petitioners to get justice, return to the USA, and be able to reopen with BIA, Consistent with Wiedersperg v. INS, 896 F.2d 1179, 1181-82 (9th Cir. 1990) A

motion to reopen may be made on the basis that the departure was not legally

executed. See Wiedersperg v. INS, 896 F.2d 1179, 1181-82 (9th Cir. 1990)

(holding that petitioner was entitled to reopen his deportation proceedings where

his state conviction, which was the sole ground of deportation, was vacated);

Estrada-Rosales v. INS, 645 F.2d 819, 820-21 (9th Cir. 1981); Mendez v. INS,

563 F.2d 956, 958 (9th Cir. 1977). The court's holdings in Wiedersperg and

Estrada-Rosales are not limited to cases in which a vacated state court conviction

was the sole ground of deportability; rather, reopening is permitted where the

conviction was a "key part" of the deportation or removal proceeding. Cardoso-

Tlaseca v. Gonzales, 460 F.3d 1102, 1107 (9th Cir. 2006) (holding that BIA was

not precluded from ruling on alien's motion to reopen); Additionally, an alien who

departs the United States after the completion of immigration proceedings and

then re-enters the United States may file a motion to reopen with an immigration

judge, Lin v. Gonzales, 473 F.3d 979, 982 (9th Cir. 2007) (concluding that 8

C.F.R. § 1003.23(b)(1) did not preclude jurisdiction in such circumstances), or

with the BIA, Reynoso-Cisneros v. Gonzales, 491 F.3d 1001, 1002 (9th Cir. 2007)

(per curiam) (concluding that 8 C.F.R. § 1003.2(d) did not preclude jurisdiction in

such circumstances).

The motion to recall all the listed mandates above, is also supported and

Consistent with precedent, where Removal of an alien from the United States does

not divest the court of jurisdiction over his petition for review. See Saavedra-Figueroa v. Holder, 625 F.3d 621, 623 n.1 (9th Cir. 2010).

My removal from the USA or Departure from the United States is immaterial to this court's jurisdiction. "[T]he text of IIRIRA makes clear that the statutory right to file a motion to reopen and a motion to reconsider is not limited by whether the individual has departed the United States." Toor v. Lynch, 789 F.3d 1055, 1060 (9th Cir. 2015). In Toor, the court held that IIRIRA invalidated the regulatory departure bar set forth in 8 C.F.R. §§ 1003.2(d) and 1003.23(b)(1). Furthermore, the regulatory departure bar is invalid, irrespective of the manner in which the movant departed the United States (voluntarily or involuntarily). Toor, 789 F.3d at 1064.

Where a petitioner has filed a motion to reopen and then is involuntarily removed before the BIA has ruled on the motion, the BIA cannot deem the motion to reopen withdrawn. See Coyt v. Holder, 593 F.3d 902, 906-07 (9th Cir. 2010) (holding that 8 C.F.R. § 1003.2 was invalid as applied to a forcibly removed petitioner). Additionally, physical removal of a petitioner by the United States does not preclude the petitioner from pursuing a motion to reopen. See Reyes-Torres v. Holder, 645 F.3d 1073, 1076-77 (9th Cir. 2011). See also Toor, 789 F.3d at 1063 (explaining that in both Coyt and Reyes-Torres, the court held that IIRIRA invalidated the regulatory departure bar as applied to involuntary departures).

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

My removal was thus not valid, and this court has now that opportunity to review the removal order. This forms the foundation under which I'm requesting this court to recall its mandates, to afford justice, where a gross miscarriage of justice where the removal order lacked a valid legal basis at the time of my removal-a collateral attack of a final order of removal based on a gross miscarriage of justice, and a collateral attack based on an alleged due process violation. The BIA psychoanalysis editorially, psychological analysis generalized, non-concrete and non-particularized, illegal commentary advisory and illegal psychoanalysis appraisal of the co-respondent's medical health at the heart, key part and the material part of the BIA removal order, lacked efficiency, fairness, and predictability, was vague significantly undermining due process interests by impairing non-citizens ability to anticipate the immigration consequences if survivors women often don't come forward about sexual assault at immigration proceeding immediately due to a complex mix of reasons including fear of retaliation, disbelief, shame, blame-shifting, concerns about their credibility, the potential for social isolation, and a lack of faith in reporting systems, all of which the #MeToo movement aims to address by creating a space where survivors feel empowered to share their experiences. There should be legal guidance's, notices to all survivor women of the consequences of not coming forward early, and at the very least, the BIA had an obligation to take late sexual assault testimony and- that

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

was enough ground to time toll. BIA just doesn't reject survivors' women without

prior notice, or explanation rested on facts, legal and afford opportunity to

respond. BIA omitted material change in circumstances of the greatest

extraordinary circumstances caused the delay in filing, the limitations period

should have been tolled 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4) & (5).

Survivors' women often don't come forward about sexual assault at

immigration proceeding due to a complex mix of reasons including fear of

retaliation, disbelief, shame, blame-shifting, concerns about their credibility, the

potential for social isolation, and a lack of faith in reporting systems, all of which

the #MeToo movement aims to address by creating a space where survivors feel

empowered to share their experiences, and thus this is could not have been

discovered or presented at the prior hearing. My-petitioner's evidence regarding

that survivors' women changed circumstances will almost always relate to the

initial claim; nothing in the statute or regulations requires otherwise. The critical

question is not whether the allegations bear some connection to a prior application,

but rather whether circumstances have changed sufficiently that a petitioner who

previously did not have a legitimate claim for asylum now had a well-founded fear

of future persecution. survivors' women new recent finding via the 'Me Too

movement' fear to come forward about sexual assault at immigration proceeding

meet that bar and threshold.

At the very least, there should have been guidance cautioning Survivors' women of the penalties and consequences of not coming forward early, that should have been communicated to us, prior to a 2013 BIA removal order. The BIA removal order shows the BIA had already made judgment of the survivors' women changed circumstances, just because she didn't come forward early-this is at the heart of why the BIA 2013 order is illegal-BIA should not make prejudicial judgments prior to fact findings. "The Fifth Amendment's Due Process Clause 'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" Dimaya v. Lynch, 803 F.3d 1110, 1112–13 (9th Cir. 2015) (citations omitted), affirmed by, Sessions v. Dimaya, 138 S. Ct. 1204, 1223 (2018). In Mellouli v. Lynch, 575 U.S. 798, 135 S. Ct. 1980, 1987 (2015), the Supreme Court noted the need for "efficiency, fairness, and predictability in the administration of immigration law." In Dimaya, this court explained that "[v]ague immigration statutes significantly undermine these interests by impairing non-citizens' ability to anticipate the immigration consequences of guilty pleas in criminal court." Dimaya, 803 F.3d at 1114 (internal quotation marks and citation omitted). Dent v. Sessions, 900 F.3d 1075, 1085 (9th Cir. 2018) (granting petition for review where's petitioner's Arizona conviction for third-degree escape was not a crime of

violence, and thus not an aggravated felony that would make him removable).

The court has but to Recall the mandates and to grant the motion, as this court (as noted above PROCEDURAL HISTORY) has in the past affirmed the BIA findings of Numerical Limitations and time bar to file a motion to re-open; Numerical Limitations-A party may make one motion to reopen and one motion to reconsider. See 8 U.S.C. § 1229a(c)(7)(A) and (c)(6)(A); 8 C.F.R. § 1003.2(c)(2) and (b)(2); see also Agonafer v. Sessions, 859 F.3d 1198, 1203 (9th Cir. 2017) ("An alien may generally file only one motion to reopen removal proceedings … ."); with the exceptions to the Deadline that "[T]he Government may still consider a late application if the applicant establishes (1) changed circumstances that materially affect the applicant's eligibility for asylum or (2) extraordinary circumstances directly related to the delay in filing an application." Singh v. Holder, 656 F.3d 1047, 1052 (9th Cir. 2011).

In my Asylum and Withholding Claims; a motion to reopen to apply or reapply for asylum or withholding of removal based on changed survivor women conditions that could not have been discovered or presented at the prior hearing, may be filed at any time. See 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii); Agonafer v. Sessions, 859 F.3d 1198, 1203-04 (9th Cir. 2017) ("[T]he ninety-day deadline and one-motion limit do not apply if the motion to reopen is based on changed country conditions."); Malty, 381 F.3d at 945; see also

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

Ramirez-Munoz v. Lynch, 816 F.3d 1226, 1229 (9th Cir. 2016); Najmabadi v. Holder, 597 F.3d 983, 987-91 (9th Cir. 2010). A petitioner's untimely motion to reopen may qualify under the changed conditions exception under 8 C.F.R. § 1003.2(c)(3)(ii), "even if the changed country conditions are made relevant by a change in the petitioner's personal circumstances." Chandra v. Holder, 751 F.3d 1034, 1039 (9th Cir. 2014) (concluding BIA abused its discretion in denying motion to reopen). Similarly, to my changed survivor women conditions, "[T]he changed country conditions exception is concerned with two points in time: the circumstances of the country at the time of the petitioner's previous hearing, and those at the time of the motion to reopen."

The BIA would not entertain my motion to reopen, and this court has affirmed BIA past motion to reopen as Numerical Limitations and time bar. This court has the two-part step to do now: to Recall the mandates to provide opportunity to reopen, and to rule that my removal order was invalid, illegal as changed survivor women conditions established changed circumstances and is extraordinary circumstances sufficient to reopen or remand to BIA's for interpretation of the 'changed circumstances' exception to the asylum statute." This is consistent with precedent, where the courts have explained that if the petitioner later discovered new evidence that was not previously available, a petitioner could then move the BIA to reopen the case; however in my instance,

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

this court has affirmed the BIA time, numerical and bar, thus the only remedy is -

the court has jurisdiction to recall mandate, consider my petitioner's request for

remand to allow me to provide more evidence on survivors women often don't

come forward about sexual assault to establish my asylum claim; He v. Holder,

749 F.3d 792, 796-97 (9th Cir. 2014); In INS v. Ventura, 537 U.S. 12, 16 (2002)

(per curiam), the Supreme Court held that where the BIA has not yet considered an

issue, the proper course is to remand to allow the BIA to consider the issue in the

first instance. There remains 'collateral consequence' that may be redressed by

success on the petition. Similarly to Stay of the Court's Mandate, the Court can

recall a Mandate  to allow the applicant to seek additional relief. This is consistent

with [u]nder the Mendez exception, where an alien outside the United States may

petition for review of his deportation order when his departure was not 'legally

executed.'" Zepeda-Melendez v. INS, 741 F.2d 285, 288, 290 (9th Cir. 1984)

("deportation of an alien without notice to his counsel is not a legally executed

departure within the meaning of 8 U.S.C. § 1105a(c), and does not strip the court

of jurisdiction to review the deportation order whether or not the alien was in

custody at the time of deportation"); see also Wiedersperg v. INS, 896 F.2d 1179,

1181-82 (9th Cir. 1990) (deportation based on a vacated conviction was not legally

executed). Where a petitioner has filed a motion to reopen and then is involuntarily

removed before the BIA has ruled on the motion, the BIA cannot deem the motion

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

to reopen withdrawn. See Coyt v. Holder, 593 F.3d 902, 906-07 (9th Cir. 2010)

(holding that 8 C.F.R. § 1003.2 was invalid as applied to a forcibly removed

petitioner). Additionally, physical removal of a petitioner by the United States

does not preclude the petitioner from pursuing a motion to reopen. See Reyes-

Torres v. Holder, 645 F.3d 1073, 1076-77 (9th Cir. 2011). See also Toor, 789 F.3d

at 1063 (explaining that in both Coyt and Reyes-Torres, the court held that IIRIRA

invalidated the regulatory departure bar as applied to involuntary departures). The

court's decision in Toor is not inconsistent with its prior decisions in Singh v.

Gonzales, 412 F.3d 1117, 1120 (9th Cir. 2005) (holding the regulatory departure

bar did not apply to noncitizens who departed before removal proceedings

commenced) and Lin v. Gonzales, 473 F.3d 979, 982 (9th Cir. 2007) (concluding

regulatory departure bard could not be applied where departure and motion to

reopen followed conclusion of proceedings). See Toor, 789 F.3d at 1060 n.3.

This court has jurisdictions via a motion to recall mandate to review

survivors women often don't come forward about sexual assault at immigration

proceeding due to a complex mix of reasons including fear of retaliation, disbelief,

shame, blame-shifting, concerns about their credibility, the potential for social

isolation, and a lack of faith in reporting systems, all of which the #MeToo

movement aims to address by creating a space where survivors feel empowered to

share their experiences, and thus this is could not have been discovered or

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

presented at the prior hearing as a "changed circumstances" question because it is

a mixed question of fact and law, and BIA motion to reopen is not an available

venue to me as this court has affirmed BIA past motion to reopen as Numerical

Limitations and time bar, I therefore do not have the opportunity to move the BIA

to reopen the case, if the I the petitioner later discovered new evidence that was

not previously available, are now available- a catch 22; A motion to recall mandate

and to remand to BIA is the only avenue available to me to get justice.

Consistent with Ramadan v. Gonzales, 479 F.3d 646, 650 (9th Cir. 2007)

(per curiam), a case where the facts were undisputed, that it had jurisdiction over

the "changed circumstances" question because it was a mixed question of fact and

law. See also Chen v. Mukasey, 524 F.3d 1028, 1031 (9th Cir. 2008) ("Under the

Real ID Act, this court may review the BIA's interpretation of the 'changed

circumstances' exception to the asylum statute." (citation omitted)); see also

Taslimi v. Holder, 590 F.3d 981, 984-85 (9th Cir. 2010) (exercising jurisdiction

over whether petitioner filed her asylum application within a "reasonable period"

given the changed circumstances presented by her religious conversion, and

concluding that asylum application was filed within reasonable time). Similarly,

the court has jurisdiction over the "extraordinary circumstances" question where

facts are undisputed. See, e.g., Toj-Culpatan v. Holder, 612 F.3d 1088, 1090 (9th

Cir. 2010) (per curiam). For example, the court has held that a "claim to

'extraordinary circumstances' arising from a legal status maintained until a

'reasonable period' before the filing of an asylum application" presented a

question of law that may be reviewed where the underlying facts were undisputed.

My departure from the United States does not terminate jurisdiction as the

above and other reasons in this motion are 'collateral consequence' that may be

redressed by success on the petition. See 8 U.S.C. § 1252(a); Mendez-Alcaraz v.

Gonzales, 464 F.3d 842, 844 (9th Cir. 2006); see also Rivera v. Mukasey, 508

F.3d 1271, 1277 (9th Cir. 2007). However, there needs to be "some remaining

'collateral consequence' that may be redressed by success on the petition." Del

Cid Marroquin v. Lynch, 823 F.3d 933, 935-36 (9th Cir. 2016) (per curiam)

(quoting Abdala v. INS, 488 F.3d 1061, 1064 (9th Cir.2007)) (explaining that

although granting Del Cid Marroquin's petition will not guarantee his return to the

United States, it will at least increase his chances of being allowed to do so. As

such, the court could provide effective relief and his removal to El Salvador did

not render the petition moot.). See also Blandino–Medina v. Holder, 712 F.3d

1338, 1342 (9th Cir. 2013) (holding that the petitioner's removal did not moot his

petition because a favorable ruling would have made it possible—at least

hypothetically—for him to obtain a waiver of the ban on reentry).

In Chavez-Garcia v. Sessions,871 F.3d 991 (9th Cir. 2017), the court held

that petitioner's "departure from the United States, without more, [did] not provide

clear and convincing evidence of a 'considered' and 'intelligent' waiver of the

right to appeal. Id. at 997. The court explained that "[t]he IJ's failure to inform

[petitioner] that his departure would constitute a waiver of his previously reserved

right to appeal to the BIA render[ed petitioner's] purported waiver invalid." Id. at

997-98.

Recall of mandate is similar or consistent with Stay of the Court's Mandate.

This court may, upon denial of a petition for review, stay its mandate to

allow the applicant to seek additional relief. See, e.g., Myers v. Holder, 661 F.3d

1178, 1178-79 (9th Cir. 2011) (order) (staying mandate until BIA ruled on motion

to reopen, and ordering that the mandate would be stayed pending disposition of

the case if the BIA granted the motion to reopen, and in the alternative, the

mandate would issue immediately if the BIA denied the motion to reopen);

Belishta v. Ashcroft, 378 F.3d 1078, 1081 (9th Cir. 2004) (order) (staying mandate

to permit BIA to reopen and consider in the first instance eligibility for asylum

based on fear of "other serious harm upon removal"); Flores-Miramontes v. INS,

212 F.3d 1133, 1143 (9th Cir. 2000) (staying mandate to permit filing of habeas

corpus petition in district court); Khourassany v. INS, 208 F.3d 1096, 1101 (9th

Cir. 2000) (staying mandate to permit applicant to seek reopening under

Convention Against Torture); Ortiz v. INS, 179 F.3d 1148, 1152 (9th Cir. 1999)

(staying mandate to permit applicants to seek reopening for relief under the

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

Nicaraguan Adjustment and Central American Relief Act ("NACARA")); Ardon-

Matute v. INS, 157 F.3d 696, 697 (9th Cir. 1998) (staying proceedings pending

BIA's adjudication of motion to reopen seeking NACARA relief); Aguilar-

Escobar v. INS, 136 F.3d 1240, 1241 (9th Cir. 1998) (staying mandate to provide

opportunity to reopen for NACARA relief);

Echeverria-Hernandez v. INS, 946 F.2d 1481, 1482 (9th Cir. 1991) (en

banc) (staying mandate pending resolution of administrative proceedings

commenced pursuant to the American Baptist Churches settlement agreement);

Roque-Carranza v. INS, 778 F.2d 1373, 1374 (9th Cir. 1985) (60-day stay to

permit applicant to seek reopening to present ineffective assistance of counsel

claim); cf. Valderrama v. INS, 260 F.3d 1083, 1086 (9th Cir. 2001) (per curiam)

(declining to stay the mandate).

**There is a continuing injury collateral consequence in my pending and**

**or ongoing Civil litigation -and compelling property interest estimated at**

**+$75,000, in the USA as social security and Medicare taxes for Plaintiff-**

**Appellant, ("Petitioner Samuel Kinuthia Gicharu."), withheld as retirement**

**benefit by "Respondent-Appellee ("the Government") unsurmountable if**

**removed to Kenya/ not allowed to return to the USA.**

The other reasons why this court should recall the mandate is to provide

justice, and it stems from this court 05/08/2024 decision page 2, where the court

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

forecloses my review of my social security benefit cancellation due to my removal from the USA; quoting the decision: "Petitioner-Appellant also has failed to develop any availing challenge to the district court's without-prejudice rejection of his request to expand the scope of the underlying habeas matter to include claims under other statutes or authorities, and, as the district court explained, petitioner appellant was and is free to file a civil complaint featuring such claims." My pursuit of that relief is in the U.S. District Court District of Oregon (Portland (3)) CIVIL DOCKET FOR CASE #: 3:24-cv-00349-AR. The Magistrate Judge Jeff Armistead ORDER: "GRANTING Gicharu's motion to notify the Commissioner….. (ECF No. 11 .) Gicharu asks the court to notify the Social Security Commissioner of the commencement of this civil action and compel a response from the Commissioner. (ECF No. 11 .) Gicharu relies on Rule 3 of the Supplemental Rules for Social Security, which provides that, in certain cases, a plaintiff is not required to serve a complaint and summons on the Commissioner, and that the court will instead notify the Commissioner of the action..."

My removal from the USA on 8-3-2023, resulted in the cancellation of my social security benefit, which had accrued over a period of 20 years from 2003. This shows a gross miscarriage of justice. At my age 75years old senior citizen, I rely on my social security. I cannot go seeking for employment; and worse to seek employment in Kenay the country ICE removed me, when I had been away from

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

Kenya since 2003. I don't have current skills relevant to Kenya, or know how at my age, to seek employment there to support myself. A successful Recall mandate allows me to come back to the USA, come back and continue receiving my social security benefits, and affords me the opportunity to file legal requests to Waiver of Inadmissibility-ban, if that is necessary. This step can only take place if mandate is recalled, and BIA is offered the opportunity to reopen. Defendant/ USCIS Administrative Form I-212 (Permission to Reapply for Admission After Deportation or Removal)-This is necessary for those who previously faced removal, and in my instant can only be reviewed by BIA on successful motion to recall mandate. I have built a strong case that gathered evidence like medical records, financial documentation, and personal statements to support the claim of hardship to survive in Kenya without my social security in my litigation 3:24-cv-00349-AR.

The unlawful Presence in Section 212(a)(9)(B)(ii) of the immigration Act defines the term "unlawfully present" for purposes of sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act. For purposes of these sections, an alien is deemed unlawfully present in the United States if present after expiration of a period of stay authorized by the Attorney General or present in the United States without being admitted or paroled. Three and Ten-Year Bars to Admission in Section 212(a)(9)(B)(i) of the Act is broken into two sub-groups according to the period of

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

unlawful presence in the United States. Section 212(a)(9)(B)(i)(I) of the Act renders inadmissible those aliens who were unlawfully present for more than 180 days, but less than one year, and subjects them to a 3-year bar to admission. Section 212(a)(9)(B)(i)(II) renders inadmissible those aliens unlawfully present for 1 year or more and subjects them to a 10-year bar to admission. These grounds of inadmissibility are applicable only to aliens seeking visas or readmission to the United States following a prior period of unlawful presence in the United States; For purposes of sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act only, the Service considers the following classes of aliens to be present in the United States pursuant to a period of stay authorized by the Attorney General: Aliens granted withholding of deportation/removal under section 243(h) of the Act for aliens placed in proceedings before April 1, 1997, or under section 241(b)(3) of the Act for aliens placed in proceedings on or after April 1, 1997;

The three and Ten-Year Unlawful Presence Bars waivers are at the discretion of the defendant; "No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver" of the three and ten-year unlawful presence bars set forth in 8 U.S.C. § 1182(a)(9)(B)(i). 8 U.S.C. § 1182(a)(9)(B)(v) ("The Attorney General has sole discretion to waive [the bars] in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established

… that the refusal of admission to such immigrant alien would result in extreme

hardship to the citizen or lawfully resident spouse or parent of such alien."").

eportation). "The exclusive means to challenge an order of removal is the petition

for review process." Martinez v. Napolitano, 704 F.3d 620, 622 (9th Cir. 2012)

The successful recall of the mandate provides justice and afford this court to

offer BIA the guidance necessary, as no administrative appellate body have

articulated an official or even consistent interpretation on the three and Ten-Year

Unlawful Presence Bars. Does the ten years continue to run after the reentry or

must that time be spent outside the United States?  I contend not-time can be spent

in the USA. The statute is silent on where the three or ten years must be spent; can

it be spent inside the United States or must it be spent outside? I'm also seeking

Recall of mandate to obtain a formal nonimmigrant waiver if it is necessary, which

would not waive the unlawful presence bar at the adjustment of status or

immigrant visa stage. A recall mandate allows my coming back and opportunity to

file legal requests to Waiver of Inadmissibility ban. This step can only take place if

mandate is recalled, and BIA is offered the opportunity to reopen. The

USCIS/defendant Form I-212 (Permission to Reapply for Admission After

Deportation or Removal): This is necessary for those who previously faced

removal, and in my instant can only be reviewed by BIA on successful motion to

recall mandate. I have built a strong case that gathered evidence like medical

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

records, financial documentation, and personal statements to support the claim of hardship. What Constitutes "Extreme Hardship"? "Extreme hardship" can include various factors, such as: Emotional or psychological distress caused by family separation, financial challenges if the qualifying relative loses financial support, medical concerns requiring treatment available only in the U.S. All of these apply to my situation at my age 75years.

A successful recall of mandate also help in the interpretation of the Statutory Language. The statute makes an applicant who has accrued more than 180 days of unlawful presence but less than one year and who has voluntarily departed the United States inadmissible for a three-year period from the date of "departure or removal." INA § 212(a)(9)(B)(i)(I). It makes an applicant who has accrued one year or more of unlawful presence and who departs inadmissible for a ten-year period. INA § 212(a)(9)(B)(i)(II). A waiver is available for those applicants who can establish extreme hardship to a qualifying relative, defined as a U.S. citizen or lawful permanent resident (LPR), spouse, or parent. INA § 212(a)(9)(B)(v). The statute is silent on where the three or ten years must be spent; can it be spent inside the United States or must it be spent outside?

A successful recall of mandate also help in the Practical Considerations-Given that the three- or ten-year period begins upon departure, those seeking to reenter the United States legally as nonimmigrants would need to be either paroled

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

into the United States pursuant to INA § 212(d)(5) or granted a waiver under INA

§ 212(d)(3)(A). This waiver is filed on Form I-192 and adjudicated by the consular

post or ICE Customs and Border Protection, and in my situation, it would be

adjudicated by BIA and ICE/defendant. The factors to be considered in deciding

whether to grant the waiver include the nature and date of the offence, possible

rehabilitation of the applicant's character, and the necessity for, or urgency of, the

applicant's proposed trip to the United States. 9 FAM 305.3-11(B). If an applicant

triggered the ten-year unlawful presence bar and reentered the United States within

that ten-year period "without being admitted," he or she would have triggered the

"permanent bar" under INA § 212(a)(9)(C)(i)(I). They would be inadmissible until

they had departed the United States, remained abroad for ten years, and then been

granted a "waiver" (consent to reapply) filed on Form I-212. INA §

212(a)(9)(C)(ii). Therefore, the question of whether the three- or ten-year period

must be spent abroad would apply only in one of the following circumstances: The

applicant triggered the three-year bar and returned illegally to the United States

within that three-year period; The applicant triggered the three- or the ten-year bar

and was subsequently inspected and admitted to the United States within that

three- or ten-year period; or The applicant triggered the three- or the ten-year bar

and was subsequently paroled into the United States within that three- or ten-year

period. In my situation, if returned may have to obtain a formal nonimmigrant

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

waiver, which would not waive the unlawful presence bar at the adjustment of

status or immigrant visa stage. My successful recall of mandate affords me to have

my BIA order reviewed and may grant me asylum-while asylum is not a direct

solution to overcoming the 10-year bar, it can still be a viable option for

individuals who have accrued unlawful presence. Asylum applicants are not

penalized for being in the U.S. without authorization, which means the 10-year bar

does not automatically disqualify someone from applying.

A successful recall of mandate help in the clarifying USCIS Policy: The

agency has never set forth the eligibility requirements for the unlawful presence

waiver in either the Adjudicator's Field Manual or the USCIS Policy Manual. As a

result, the agency does not have any official position on whether the three- or ten-

year period for unlawful presence must be spent outside the United States after it

has been triggered by a departure.

In an opinion letter from the USCIS Office of the Chief Counsel dated July

14, 2006, the agency stated that: "The inadmissibility period continues to run…if

the alien is paroled into the United States or is lawfully admitted as a

nonimmigrant under section 212(d)(3), despite his or her inadmissibility under

section 212(a)(9)(B)." The letter clarified that the three- or ten-year inadmissibility

period would not continue to run within the United States for "any alien already

subject to a section 212(a)(9) bar who subsequently enters the United States

unlawfully," or for one who "enters lawfully (such as a parolee or temporary nonimmigrant under section 212(d){3)) and remains beyond such authorization." Therefore, if the person entered lawfully or was paroled within the three- or ten-year period, the time would continue to run while the person was within the United States but only for the period allowed at the time of admission or parole, unless extended. After that, "he may trigger a new. or extend an existing 212(a)(9) inadmissibility bar upon departure."

In a subsequent opinion letter from the chief counsel dated Jan. 6, 2009, the agency repeated its conclusion that the inadmissibility period continues to run within the United States for a person lawfully admitted as a nonimmigrant or paroled under section 212(d)(3), despite his or her inadmissibility under section 212(a)(9)(B). But it added that "this interpretation will not aid an alien who returns to or remains in the United States unlawfully."

In at least one USCIS district director's decision, the agency tried to draw an analogy to INA § 212(a)(9)(A) and the bars for persons who are subject to a deportation or removal order. Those applicants are inadmissible until they have remained outside of the United States for the necessary time period after the date of deportation or removal. The agency cites to a regulation that states that an applicant who has "been deported or removed from the United States and is applying for a visa, admission to the United States, or adjustment of status, must

present proof that he or she has remained outside of the United States for the time period required for re-entry after deportation or removal." 8 CFR § 212.2(a).

The agency notes that the "waiver" for both 212(a)(9)(A) and (B) uses the same statutory language—"again seeks admission within"—and should be given the same definition. Because the ground of inadmissibility set forth in INA § 212(a)(9)(A) predates the 1996 statutory change that added INA § 212(a)(9)(B), and it was settled interpretation that the five- or twenty-year period must be spent abroad, the district director argued, the same interpretation should apply to those subject to the unlawful presence bars. It cites case law applying general principles of legislative intent.

The regulation cited also clarifies that readmission as a nonimmigrant who was subject to the bars under 212(a)(9)(A) would not "interrupt the five or twenty consecutive year absence requirement" if the person reentered after being granted a "waiver" under INA § 212(d)(3). 8 § CFR 212.2(a). Hence, a nonimmigrant's reentry without first obtaining a waiver would interrupt the running of the necessary time period, and any time spent inside the United States would toll its running. The Service is applying that same principle to those subject to the unlawful presence bar who reenter as a nonimmigrant without first being granted a 212(d)(3) waiver.

This reasoning falls apart, however, because the 1996 law wiped out the

prior ground of inadmissibility for those who had been "excluded" or "deported" and introduced whole new concepts in INA § 212(a)(9), such as removal, expedited removal, a ten-year bar, and replaced the concept of "excludability" with "inadmissibility." Any administrative interpretations of the prior statutory provision would therefore be inapplicable.

Nor does the current regulation cited by the district director even govern this section of the law. As the BIA found in In Re Torres-Garcia, 23 I&N Dec. 866, 874 (BIA 2006): the language, structure, and regulatory history of 8 CFR § 212.2 make clear, the regulation was not promulgated to implement current section 212(a)(9) of the Act. Instead, it was published in response to significant legislative changes brought about by the Immigration Act of 1990.

The law that existed prior to the 1996 change was enacted in 1990 and imposed a five-year bar on "excluded" aliens and a 20-year period for those convicted of an aggravated felony. Current INA § 212(a)(9)(A)(ii)(II) imposes a five-year bar for those subject to expedited removal, a ten-year inadmissibility period for those ordered removed by an immigration judge and renders those convicted of aggravated felonies inadmissible permanently.

A successful recall of mandate also helps me in reuniting with my son Isaac Kinuthia court case 23-2029, who was granted withholding of removal from Kenya, consistent with family unity protection pursuant to section 301 of the

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

Immigration Act of 1990.

A successful recall of mandate also helps the BIA offer a response to the joint motion to re-open my attorney filed on 10-5-2023 with BIA. Please see the attached email from my attorney, showing that my attorney Michael Kaplan, Esq, petitioned the BIA a joint motion to re-open, and BIA did not respond. The Motion followed another request to re-open filled just two week prior/in September 2023. The BIA has not responded and thus a recall of mandate, and Remand will provide the BIA with the opportunity to respond favorably-as the BIA response to these motions to reopen, would be that they are time and limit barred- a catch 22; since this court has affirmed BIA past motion to reopen as Numerical Limitations and time bar. The BIA-delay- since 10-2023 with no response, and tied to the Humanitarian grounds- loss of my social security compel this court to act-and Recall mandate and Remand to BIA. United States v. Gaubert, 499 U.S. 315, 328-32 (1991). First, a court must ask whether the challenged conduct was in fact "discretionary in nature"—that is, whether the conduct involved "'an element of judgment or choice.'" Viet. Veterans of Am. v. Shinseki, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); Han Cao v. Upchurch, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) ("Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are coextensive")

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

Thus, a recall of the mandate is warranted to prevent injustice and to allow this Court to review the hardship determination and, consequently, whether Petitioner's case should be remanded to pursue the appropriate applications as stipulated above.

## CERTIFICATE OF COMPLIANCE

This multiple response Motion/brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) because this brief contains under **7600 words Total (all words)-** including the parts of the brief exempted by Fed. R. App. P. 32(f).

This Motion/brief has been prepared in a proportionally spaced typeface using Microsoft Word in Time New Roman 14-point font.

MOTION TO RECALL THE MANDATES AND REMAND TO BIA

# CERTIFICATE OF SERVICE

I, Samule Kinuthia Gicharu, hereby affirm that I have caused to be mailed on this,

13th day of March 2025 a copy of this Brief/ petition to the above- named

defendants and or attorney of record- at 1 courthouse way, suite 9200,

Boston MA 02210 or to the DC address/U.S. Department of Justice

Civil Division Office of Immigration Litigation District Court Section P.O.

Box 868 Ben Franklin Station, Washington, DC 20044-0878

# S IGNATURE

Respectfully filed by Petitioner (Plaintiff-me),

Signed: _____*SAMUEL*_____

Samuel K. Gicharu
Pro se litigant
c/o 116 Midland Street,
Lowell, Ma 01851
Cell: 978-761-5214,
Email: igk532@gmail.com

EXHIBIT 1

APPENDIXES

21 Pages

21 PAGES

EXHIBIT 1

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

Files: A097 849 018 – Boston, MA
      A097 849 019

Date:

MAR − 8 2013

In re: SAMUEL KINUTHIA <u>GICHARU</u>
      NAOMI WAHU <u>KINUTHIA</u>

IN REMOVAL PROCEEDINGS

APPEAL and MOTION

ON BEHALF OF RESPONDENTS:  Ron Meyers, Esquire

APPLICATION:  Asylum; withholding of removal; Convention Against Torture; reopening

The respondents, natives and citizens of Kenya, appeal the Immigration Judge's decision of May 16, 2011, denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Sections 208(b)(1)(A) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3); 8 C.F.R. §§ 1208.16(c), 1208.18. The respondents also submitted a motion to reopen. The appeal will be dismissed. The motion will be denied.[1]

We review for clear error the findings of fact, including the determination of credibility, made by the Immigration Judge. 8 C.F.R. § 1003.1(d)(3)(i). We review de novo all other issues, including whether the parties have met their burden of proof, and issues of discretion. 8 C.F.R. § 1003.1(d)(3)(ii). The lead respondent's asylum application was submitted prior to the enactment of the REAL ID Act provisions.

The respondents argue that, contrary to the Immigration Judge's findings, the lead respondent was persecuted after leaving his membership in the Mungiki group (Resp. Br. at 3). The respondents have request that the Board reopen their case based upon the co-respondent's post-removal hearing revelation that she was once attacked by the Mungiki and subjected to female genital mutilation ("FGM") (Resp. Br. at 1).

We agree with the Immigration Judge that the respondents did not establish eligibility for asylum. The lead respondent testified that during his involvement with the Mungiki, he witnessed, but did not participate in, numerous violent events, including murder (I.J. at 3; Tr. at 26). The lead respondent also learned that the Mungiki started attacking businesses and forced women to submit to FGM and ultimately left because "I realized this is a very bad organization" (I.J. at 5; Tr. at 26, 28). Upon leaving the group in 1996, his business was set on fire (I.J. at 5; Tr. at 29). He testified, however, that he was never harmed, and did not leave Kenya until 2003, approximately three years after receiving a passport (I.J. at 5; Tr. at 32). As found by the Immigration Judge, the lead respondent never reported the Mungiki's crimes while a member of the group, and did not seek police protection after leaving the group (I.J. at 11; *see* Tr. at 29).

---

[1] Samuel Kinuthia Gicharu (A097 849 018) is the lead respondent and only one to testify. Co-respondent Naomi Wahu Kinuthia (097 849 019) is the lead respondent's wife.

A097 849 018 et al.

Although the lead respondent claims that the government "was unable to protect [him]" he submitted no documentary or other evidence to support this general assertion (Resp. Br. at 3; Tr. at 36). Moreover, the record shows that the Kenyan government is able and willing to protect citizens from the Mungiki. *See Guaman-Loja v. Holder*, --- F.3d ----, 2013 WL 491984 (1st Cir. Feb. 7, 2013) (in order to qualify as a refugee, the respondent must have suffered "persecution that is the direct result of government action, government-supported action, or government unwillingness or inability to control private conduct"). The State Department's Country Background Report states that the Kenyan government banned membership in the Mungiki criminal organization in 2002 and that the Mungiki's influence has since waned (I.J. at 11; Group Exh. filings of September 8, 2009, p. 13, Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Kenya Country Reports on Human Rights Practices – 2008*). *See generally Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209 (BIA 2010) (State Department reports on country conditions are highly probative evidence and are usually the best source of information on conditions in foreign nations), *rev'd in part, Huang v. Holder*, 677 F.3d 130 (2d Cir. Mar. 27, 2012) (affirming on probative value of State Department reports). The respondents' own filings further establish that the government has taken steps to protect its citizens from the Mungiki (I.J. at 11; Group Exh. filings of October 19, 2009, pp. 4, 11, 15). *See Guaman-Loja v. Holder, supra; cf. Khattak v. Holder*, 704 F.3d 197, 202-03 (1st Cir. 2013) (explaining the sufficiency of evidence necessary to establish that the government is both unwilling and unable to control private actors). Because the lead respondent did not show that the government is unable or unwilling to control the Mungiki, he did not meet his burden to establish asylum eligibility.[2] 8 C.F.R. § 1208.13(a).

Finally, the respondents' motion to reopen and reconsider is deemed a motion to remand and we deny the motion. *See* 8 C.F.R. § 1003.2(c)(4) (stating that a motion to reopen that is filed while an appeal is pending before the Board may be deemed a motion to remand and may be consolidated with, and considered by the Board in connection with the appeal to the Board); *Matter of L-V-K-*, 22 I&N Dec. 976, 978 (BIA 1999). Motions to remand are adjudicated under the same standards as are motions to reopen. *See Matter of Ige*, 20 I&N Dec. 880, 884 (BIA 1994). Such a motion may not be granted unless the evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. 8 C.F.R. 1003.2(c)(1); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992). The respondents' motion will be denied because they failed to present evidence that could not have been discovered or not presented at the former hearing. Both respondents were represented by counsel during their removal hearing, which included the lead respondent's testimony about forced FGM by the Mungiki. We are not persuaded that the co-respondent "had relevant evidence buried inside her that was not triggered by traditional conversation and interviews" regarding her own FGM experience (Resp. Br. at 1). The respondents do not indicate what    ←

---

[2]  We acknowledge the respondents' concession on appeal that they are not relying on their membership in a particular social group ("PSG") to qualify for asylum (Resp. Br. at 3). Regarding their argument that the lead respondent was persecuted based upon his own imputed political and religious beliefs, the Immigration Judge properly found that such a basis would not establish asylum eligibility (I.J. at 11). *See generally Matter of S-E-G-*, 24 I&N Dec. 579 (BIA 2008). Additionally, even if he established that he was targeted by the Mungiki on account of a protected ground, the lead respondent still did not establish asylum eligibility because of the government's willingness and ability to control the Mungiki. *See Guaman-Loja v. Holder, supra*.

2

A097 849 018 et al.

triggered the co-respondent's decision to disclose alleged evidence of her forced FGM, and state only that "Mental [e]valuations of [the co-respondent] may confirm scientifically her past experiences and her fear of returning to Nigeria"[3] (Resp. Br. at 1). However, during the pendency of their appeal, the respondents have not submitted any evidence of the co respondent's mental condition, or any other evidence to show that she was prevented from testifying about her past. Nor have they submitted evidence to corroborate the permanent injury allegedly inflicted on the co-respondent. We therefore conclude that evidence of the co-respondent's experience was previously available. It follows that the respondents' motion is denied.

Accordingly, the following orders are issued.

ORDER: The appeal is dismissed.

FURTHER ORDER: The motion is denied.

FOR THE BOARD

---

[3] We assume the respondent's indication of Nigeria, instead of the respondent's home country of Kenya, is a scrivener's error.

3

# United States Court of Appeals
## For the First Circuit

No. 15-2528

SAMUEL KINUTHIA GICHARU; NAOMI WAHU KINUTHIA,

Petitioners,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

Before

Torruella, Lynch and Barron,
Circuit Judges.

**JUDGMENT**

Entered: May 17, 2016

After careful review, we allow the government's motion to remand this matter to the Board of Immigration Appeals ("BIA"). We vacate the BIA's decision and remand the matter for further proceedings consistent with the government's motion. We note the government's representation that the petitioners' removal will be stayed pending the BIA's decision on remand.

Vacated and remanded.

By the Court:

/s/ Margaret Carter, Clerk

5

cc:
Donna Carr, Chief Clerk, Board of Immigration Appeals
Joanna M. Golding
Janice Kay Redfern
LaTia N. Bing
Lindsay Brooke Glauner
Sarah Abigail Byrd

6

# United States Court of Appeals
## For the First Circuit

———————————

Nos. 16-2520, 17-1455

SAMUEL KINUTHIA GICHARU; NAOMI WAHU KINUTHIA,

Petitioners,

V.

JEFFERSON B. SESSIONS, III, Attorney General,

Respondent.

———————————

Before

Lynch, <u>Circuit Judge</u>,
Souter,* <u>Associate Justice</u>,
and Stahl, <u>Circuit Judge</u>.

———————————

**JUDGMENT**

Entered: February 23, 2018

———————————

In this consolidated case, the petitioners seek judicial review of two decisions of the Board of Immigration Appeals ("BIA"): (1) the BIA's 2016 decision denying their motion to reopen, and (2) the BIA's 2017 decision denying their motion reconsider. Petitioners assert that the BIA abused its discretion by failing to consider the changed country conditions in Kenya and, instead, by ruling that their motion was temporally barred. Alternatively, petitioners propose that the time bar should be tolled due to ineffective assistance of counsel.

In May 2011, an Immigration Judge ("IJ") denied petitioners' application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Petitioners appealed the decision to the BIA and also filed a motion to reopen, considered by the BIA as a motion to remand. On March 8, 2013, the BIA upheld the IJ's decision denying petitioners' application for relief. The BIA also denied petitioners' motion to remand.

———————————

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

On August 24, 2015, petitioners filed the present motion to reopen. The BIA denied petitioners' motion to reopen as time barred. Thereafter, petitioners petitioned for review of that decision to the First Circuit and, upon the respondent Attorney General's unopposed motion to remand, the Court remanded the case to the BIA, with instructions for the BIA to reconsider the motion to reopen in light of the fact that petitioners' son had recently been granted withholding of removal. On remand, the BIA again denied petitioners' motion to reopen.

The BIA found that the evidence provided by petitioners did not support the changed country conditions exception to the statutory and regulatory time limit for bringing a motion to reopen. "[T]he evidence does not establish that conditions or circumstances in Kenya have changed in ways that are material to their eligibility for asylum . . . . The Mungiki organization is still outlawed and the evidence does not show that it has grown stronger." As per this Court's remand instructions, the BIA determined that the evidence that petitioners' son was recently granted withholding of removal was not relevant, for a variety of reasons, including that the son's affidavit "does not provide newly-available evidence as all events [] describe[ed] occurred before the [petitioners'] 2011 hearing . . . ." The BIA found that "the evidence submitted with [petitioners' motion] relating to [their son] is not shown to be material to the [petitioners'] eligibility for asylum and does not support reopening of these proceedings." The BIA also explained that it "will not reopen [the] matter on account of ineffective assistance of counsel" because "due diligence is not shown." Petitioners filed a motion to reconsider, which the BIA also denied in April 2017.

"We review the BIA's decisions under a deferential abuse of discretion standard." Xin Qiang Liu v. Lynch, 802 F.3d 69, 74 (1st Cir. 2015). We uphold the agency's subsidiary findings of fact as long as they are supported by substantial evidence, and we "set[] aside a decision only where it rests on an error of law or reflects arbitrary or capricious decision-making." Oliveira v. Holder, 568 F.3d 275, 277 (1st Cir. 2009). Discerning neither an abuse of discretion nor an error of any kind, we deny the petition for review.

The BIA did not abuse its discretion in denying petitioners' motion to reopen. The evidence in the record supports the BIA's conclusion that petitioners' "new evidence is cumulative of the evidence considered at the [original] hearing and in their previous motion to remand, and indicates a continuation of relevant country conditions or circumstances in Kenya rather than material change."

As to petitioners' claim that the deadline for the motion should be tolled due to ineffective assistance of counsel, we have previously explained that "if available in this context, equitable tolling 'is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.'" Neves v. Holder, 613 F.3d 30, 36 (1st Cir. 2010) (per curiam) (quoting Wallace v. Kato, 549 U.S. 384, 396 (2007)). We do not find that the BIA abused its discretion in concluding that petitioners failed to act diligently by waiting 36 months to file their motion to reopen and that petitioners reasonably could have been expected to file earlier.

As petitioners cannot demonstrate that the BIA abused its discretion, we deny their petition for review.

By the Court:

/s/ Margaret Carter, Clerk

cc:
Joanna M. Golding
Janice Kay Redfern
Oil Oil

9

# United States Court of Appeals
## For the First Circuit

No. 19-1864

SAMUEL KINUTHIA GICHARU,

Plaintiff, Appellant,

v.

DONNA CARR, in her capacity as Chief Clerk of the Board of
Immigration Appeals; JAMES MCHENRY, in his capacity as Director
of the Executive Office for Immigration Review; MICHAEL E.
HOROWITZ, in his capacity as Inspector General, Civil Rights &
Civil Liberties Complaints, U.S. Department of Justice,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Thompson and Kayatta,
Circuit Judges.*

Joanna M. Golding, with whom Barker, Epstein & Loscocco was
on brief, for appellant.
Kevin C. Hirst, Trial Attorney, U.S. Department of Justice,
Civil Division, Office of Immigration Litigation, with whom Joseph
H. Hunt, Assistant Attorney General, Civil Division, William C.

---

* Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's opinion in this case. The remaining two
panelists therefore issued the opinion pursuant to 28 U.S.C. §
46(d).

Peachey, Director, Office of Immigration Litigation, Yamileth G. Davila, Assistant Director, and Michael A. Celone, Senior Litigation Counsel, were on brief, for appellees.

───────────

December 16, 2020

───────────

unavailable.   Indeed, the courts of appeals regularly review
decisions by the BIA on ineffective assistance of counsel claims
asserted through both timely and untimely motions to reopen.  See,
e.g., Wang v. Ashcroft, 367 F.3d 25, 27-29 (1st Cir. 2004) (noting
"the sheer volume of ineffective assistance of counsel claims
asserted by deportable aliens" and reviewing the BIA's decision on
one such claim asserted through a timely motion to reopen); Romer
v. Holder, 663 F.3d 40, 43 (1st Cir. 2011) (remanding to the BIA
with instructions to consider the petitioner's equitable tolling
argument on an untimely motion to reopen).



     In sum, Gicharu's request that we compel the BIA to
"rescind" the final order of removal necessarily rests on a
contention that something occurred in connection with the issuance
of that order that renders it inequitable to leave in place.  That
contention "aris[es] from" the removal proceedings, and our
acceptance of it would require our review of precisely the same
issues regarding sufficiency of service and adequacy of
representation that Gicharu could have raised in his challenge to
the BIA's decision not to reopen.[2]  Put differently, exercising
jurisdiction over Gicharu's claims would encourage just the sort
of "scattershot and piecemeal" litigation that Congress sought to

_____

     [2]  That Gicharu actually did pursue his claim of ineffective
assistance of counsel in a motion to reopen before the BIA and on
a petition for review in this court well illustrates this point.

12

# United States Court of Appeals
## For the First Circuit

No. 21-1343

NAOMI WAHU KINUTHIA; SAMUEL KINUTHIA GICHARU,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

Before

Barron, <u>Chief Judge</u>,
Lynch, Thompson,
Kayatta and Gelpí, <u>Circuit Judges</u>.

**JUDGMENT**

Entered: April 26, 2022

The request for initial en banc hearing having been submitted to the active judges of this court and a majority of the judges not having voted that the case be heard en banc, it is ordered that the request for an initial en banc hearing be denied. Fed. R. App. P. 35(a); 1st Cir. R. 35.0(a)(1).

The panel assigned to hear this matter having carefully reviewed the record and the parties' submissions, the respondent's motion for summary disposition is allowed, and the petition for review is denied. The BIA concluded that petitioners' motion to reopen was both untimely and number-barred. <u>See</u> 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c)(2). Petitioners' brief does not address the numerical bar, so any challenge to the BIA's determination on that point is waived. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

Further, even in the absence of this waiver, we would find no abuse of discretion in the BIA's conclusion that the motion to reopen was also time-barred. In <u>Gicharu</u> v. <u>Sessions</u>, Nos. 16-2520 & 17-1455, 2018 WL 11339147, at *2 (1st Cir., Feb. 23, 2018), we rejected petitioners' equitable tolling argument, and under the law of the case doctrine, we will not revisit that question. <u>See</u> <u>Enwonwu</u> v. <u>Gonzales</u>, 232 F. App'x 11, 14 (1st Cir. 2007).

Finally, even in the absence of the numerical and time bars, under the law of the case doctrine we cannot revisit petitioner Kinuthia's contention that the matter should have been reopened to allow her to pursue her own claims for relief from removal. That question was also settled in her previous petition for review.

Petition for review denied. See 1st Cir. R. 27.0(c). All other pending motions are denied.

By the Court:

Maria R. Hamilton, Clerk

cc:
Naomi Wahu Kinuthia
Samuel Kinuthia Gicharu
Janice Kay Redfern
OIL OIL

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SAMUEL KINUTHIA GICHARU,

        Plaintiff,

    v.

MERRICK GARLAND, *Attorney General of the United States*, MARTIN O'MALLEY, *Commissioner of the Social Security Administration (SSA)*, DAVID T. WESLING, *Assistant Field Office Director for U.S. DHS, ICE, Burlington, MA, and* SUSAN DIBBINS, *Chief USCIS Administrative Appeals Office*,

        Defendants.

Case No. 3:24-cv-00349-AR

**NOTICE OF LAWSUIT AND WAIVER OF SERVICE FORM**

**TO:**   **Civil Process Clerk**
United State Attorney's Office for the District of Oregon
1000 SW Third Ave Suite 600
Portland, OR 97204

      Plaintiff, who is proceeding *pro se*, has commenced a lawsuit against several United States officers. A copy of the Complaint is attached to this Notice.

      Plaintiff has attempted to serve the United States and the named officer defendants, and has provided proof that he sent a summons by first class mail to each defendant. However, plaintiff's proof of service does not demonstrate that he has fully complied with the requirements of Federal Rule of Civil Procedure 4(i). Accordingly, the court has entered an order explaining to plaintiff the defects in his proof of service. A copy of that Order is attached to this Notice.

      Plaintiff has requested that the court notify the Social Security Commissioner of this action and compel a response from all defendants by July 1, 2024. To promote the just and speedy resolution of this action, the court has determined that it is appropriate to notify the United States

NOTICE OF LAWSUIT AND WAIVER OF SERVICE FORM

(5

and the Commissioner of this action.

This is not a formal summons. Attached to this notice is a waiver of formal service of a summons. If defendants waive service, the action will then proceed as if defendants had been served on the date the waiver is filed, and defendants will have 60 days from the date this notice is sent (see date below) to answer the complaint.

DATED June 26, 2024.

JEFF ARMISTEAD
United States Magistrate Judge

NOTICE OF LAWSUIT AND WAIVER OF SERVICE FORM

 Gmail

**Isaac G. K. <igk532@gmail.com>**

---

**Michael Kaplan** <MK@rubinpom.com>                                    Thu, Oct 5, 2023 at 11:22 AM
To: Knaomii Knaomii <naomikinuthia37@gmail.com>, Jeffrey Rubin <jbr@rubinpom.com>, Kimberly Williams
<KW@rubinpom.com>, Todd Pomerleau <tcp@rubinpom.com>, Isaac Kinuthia <IGk532@gmail.com>

Hi Naomi/Isaac,


Per our phone conversation, please see attached the proposed joint motion that we submitted to the Department of
Homeland Security and are awaiting their response.


Regards,


Michael Kaplan, Esq.


**Rubin | Pomerleau PC**

Two Center Plaza, Suite 520

Boston, MA 02108

(617) 367-0077 - office

(617) 367-0071 - fax

RubinPom.com


**DISCLAIMER:** This email may be protected by attorney-client work product and privilege.  If you are not the intended
recipient, please delete the email and notify Rubin Pomerleau PC at the address above.

[Quoted text hidden]

📄 **Joint MTR DHS Draft.docx**
28K

17



# Application for Permission to Reapply for Admission Into the United States After Deportation or Removal

### Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS Form I-212**
OMB No. 1615-0018
Expires 03/31/2027

| For DHS Use Only | | | |
|---|---|---|---|

**Alien Registration Number**

A-

**Initial Receipt** | **Transferred In**

**Fee Stamp**

**Action Block**

**Approved**

☐ INA 212(a)(9)(A) for Advance Approval
☐ INA 212(a)(9)(A)
☐ INA 212(a)(9)(C)

**Denied**

**Relocated Returned**

**Transferred Out**

**Remarks**

**DHS Office Name/Location**

| To be completed by an Attorney or Accredited Representative (if any). | ☐ Select this box if Form G-28 or Form G-28I is attached. | Attorney State Bar Number (if applicable) | Attorney or Accredited Representative USCIS Online Account Number (if any) |
|---|---|---|---|

▶ **START HERE - Type or print in black ink.**

## Part 1. Information About You

1. Alien Registration Number (A-Number) (if any)

   ▶ A-

### Your Full Name

**2.a.** Family Name (Last Name)

**2.b.** Given Name (First Name)

**2.c.** Middle Name

### Other Names Used

Provide all other names you have ever used, including aliases, maiden name, and nicknames. If you need extra space to complete this section, use the space provided in **Part 9. Additional Information.**

**3.a.** Family Name (Last Name)

**3.b.** Given Name (First Name)

**3.c.** Middle Name

**4.a.** Family Name (Last Name)

**4.b.** Given Name (First Name)

**4.c.** Middle Name

### Mailing Address  *USPS ZIP Code Lookup*

**NOTE:** If you are outside the United States, provide a U.S. mailing address, if available. **If a U.S. mailing address is not available, provide your mailing address abroad.**

**5.a.** In Care Of Name (if any)

**5.b.** Street Number and Name

**5.c.** ☐ Apt. ☐ Ste. ☐ Flr.

**5.d.** City or Town

**5.e.** State      **5.f.** ZIP Code

**5.g.** Province

**5.h.** Postal Code

**5.i.** Country

*18*

# United States Court of Appeals
## For the First Circuit

No. 23-1818

SAMUEL KINUTHIA GICHARU,

Petitioner - Appellant,

v.

ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility,

Respondent - Appellee.

Before

Gelpí, Montecalvo and Rikelman,
Circuit Judges.

**JUDGMENT**

Entered: May 8, 2024

Petitioner-Appellant Samuel Kinuthia Gicharu appeals from the district court's disposition of the underlying 28 U.S.C. § 2241 habeas proceeding and from the district court's denial of a post-judgment motion for reconsideration. The focus of the § 2241 petition was garnering petitioner-appellant's release from immigration detention, and the district court concluded that petitioner-appellant's pursuit of such relief had been mooted because petitioner-appellant had been removed from the United States and thus no longer was being detained. Additionally, petitioner-appellant had made filings aimed at expanding the underlying proceeding to include claims under the Federal Tort Claims Act, the Administrative Procedure Act, and Bivens v. Six Unknown Agents, 403 U.S. 388 (1971). The district court rejected that request "without prejudice," providing several reasons why expansion of the habeas proceeding would not be appropriate and expressly stating, "Thus, if Gicharu wishes to pursue any non-habeas claims, he may file a civil complaint on his own behalf." The district court cited the reasoning set out in its earlier order when denying petitioner-appellant's post-judgment motion for reconsideration.

On appeal, we have applied de novo review to the district court's conclusion that petitioner-appellant's removal from the country had mooted his habeas-based request for release from immigration detention. See Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) ("We exercise de novo review when determining whether a case is moot."). Petitioner-Appellant has

failed to demonstrate error as to that conclusion. See MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288, 934 (2023) ("A 'case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'") (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013)); Mehmood v. United States Att'y Gen., 808 Fed. App'x 911 (11th Cir. 2020) (unpublished per curiam) (dismissing as moot appeal from denial of immigration-related habeas relief in light of petitioner-appellant's removal from country); see also Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 30 (1st Cir. 2015) (this court "do[es] not consider arguments for reversing a decision of a district court when the argument is not raised in a party's opening brief"); Berrios Rivera v. Brit. Ropes, Ltd., 575 F.2d 966, 969 (1st Cir. 1978) ("[I]t is the burden of the appellants to demonstrate that the ruling of the district court was erroneous.").

Petitioner-Appellant also has failed to develop any availing challenge to the district court's without-prejudice rejection of his request to expand the scope of the underlying habeas matter to include claims under other statutes or authorities, and, as the district court explained, petitioner-appellant was and is free to file a civil complaint featuring such claims. See Sparkle Hill, Inc., 788 F.3d at 30 (waiver); Berrios Rivera, 575 F.2d at 969 (appellant's burden); cf. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 117 (2020) (discussing traditionally limited scope of habeas proceedings).

Finally, with the arguments set out in his briefs, petitioner-appellant has failed to demonstrate that the district court abused its discretion by denying his post-judgment motion for reconsideration. See Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) ("The standard of appellate review is [] deferential: we will not overturn the district court's denial of a motion for reconsideration absent an abuse of discretion.").

The rulings of the district court are **AFFIRMED**. See Local Rule 27.0(c) (court may summarily dispose of appeal under appropriate circumstances). Any remaining pending motions or requests, to the extent not mooted by the foregoing, are **DENIED**.

By the Court:

Maria R. Hamilton, Clerk

cc:
Samuel Kinuthia Gicharu
Donald Campbell Lockhart
Jessica W. P. D'Arrigo
Dhruman Y. Sampat
Mark Sauter

# United States Court of Appeals
## For the First Circuit

No. 23-1818

SAMUEL KINUTHIA GICHARU,

Petitioner - Appellant,

v.

ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility,

Respondent - Appellee.

Before

Gelpí, Montecalvo and Rikelman,
<u>Circuit Judges</u>.

**ORDER OF COURT**

Entered: March 10, 2025

This matter is before the court on petitioner's "Motion to Recall the Mandate . . . ." Petitioner captioned the motion for filing in the above-captioned appeal, but, in the body of the motion, makes reference to past appeals in this court. We have considered the motion only in relation to the above-captioned appeal. If petitioner wishes to seek recall of mandate in a different case, he should file a motion bearing the caption of that case.

Turning to the merits of the current motion, because petitioner has not demonstrated that recall of mandate is in order, the motion is denied. <u>See generally</u> <u>Kashner Davidson Sec. Corp.</u> v. <u>Mscisz</u>, 601 F.3d 19, 22 (1st Cir. 2010) (standard).

By the Court:

Anastasia Dubrovsky, Clerk

cc:
Samuel Kinuthia Gicharu, Donald Campbell Lockhart, Jessica W. P. D'Arrigo, Dhruman Y. Sampat, Mark Sauter

Case: 19-1864    Document: 00118281202    Page: 61    Date Filed: 03/18/2025    Entry ID: 6707633

# PRIORITY ★ MAIL ★

**UNITED STATES POSTAL SERVICE** ®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: SAMUEL KINUTHIA GICHARU,
116 MIDLAND STREET,
LOWELL, MA 01851

**TO:** CLERK,
OFFICE OF THE CLERK,
UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT,
1 COURTHOUSE WAY, SUITE 2500,
BOSTON,
MA 02210

Label 228, March 2016          FOR DOMESTIC AND INTERNATIONAL USE

PS00011132700

LFRB July 2022
ID: 12 x 11.75 x 5.5
OD: 12.25 x 12 x 6
ODCUFT: 0.510

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

**UNITED STATES POSTAL SERVICE** ®          Retail

**P**    US POSTAGE PAID
Origin: 56201
03/12/25
2697550203-77

**$30.85**

PRIORITY MAIL®

12 Lb 9.4 Oz

RDC 03

EXPECTED DELIVERY DAY:  03/15/25

C079

SHIP TO:
STE 2500
1 COURTHOUSE WAY
BOSTON MA 02210-3004



USPS SIGNATURE® TRACKING #

9510 8158 8632 5071 8687 84

BOX
NAL USE



Schedule free
age Pickup,
the QR code.



USPS.COM/PICKUP

