# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

SAMUEL KINUTHIA GICHARU,
PLAINTIFF -APPELLANT

v.

DONNA CARR, in her capacity as Chief Clerk of the Board of Immigration Appeals; JAMES MCHENRY, in his capacity as Director of the Executive Office for Immigration Review; MICHAEL E. HOROWITZ, in his capacity as Inspector General, Civil Rights & Civil Liberties Complaints, U.S. Department of Justice,

DEFEENDANTS -APPELLEES

**Notice of supplementary authority**

For the Petitioner-Pro-se,
Samuel Kinuthia Gicharu
c/o 116 Midland Street,
Lowell, MA 01851
Phone: (978) 761-5214
Email: igk532@gmail.com

RECEIVED FOR FILING
IN CLERK'S OFFICE
2025 MAY 19 P 0:44
US COURT OF APPEALS
FOR THE FIRST CIRCUIT

Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, appellant' submits this notice of supplementary authority. On June 16, 2025, the United States Supreme Court released its enclosed opinion in No. 24A1007 A. A. R. P., ET AL. v. DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL. which ruled on page 4 of the enclosed Supreme Court decision: "…notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster. But it is not optimal for this Court, far removed from the circumstances on the ground, to determine in the first instance the precise process necessary to satisfy the Constitution in this case. We remand the case to the Fifth Circuit for that purpose."

A key holding in this supreme court decision, is that "notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster"; similarly to my case, I was given inadequate notice devoid of information about how to exercise due process rights to contest that removal; worst, my notice which was less than one hour, not even the 24 hours the supreme court indicate is inadequate. The supreme court rejected 24-hour notice. My notice was verbal and only 1 hour in detention 8-1-2023 and was devoid of information about how to exercise due process rights to contest my removal- surely this does not pass muster, and support the motion to recall mandate.

The defendant Case# 23-1818 BRIEF FOR APPELLEE Document# 00118085312 Page 15, factual background represented: "On August 1, 2023, ICE revoked Gicharu's release under an order of supervision and re-detained Gicharu. Appx.154. Next, ICE officially notified Gicharu of the revocation of release and conducted an informal interview as required per the governing regulations. Appx.154. Two days later, on August 3, Gicharu and an ICE agent boarded a nonstop commercial flight at John F. Kennedy International Airport and flew to Nairobi, Kenya. Appx.154. Upon their arrival in Kenya, Gicharu's removal order was considered properly executed. Appx.154." it is evident that the verbal "notice roughly less than 24 hours before removal, devoid of information about how to exercise due process rights to contest my removal, surely does not pass muster" consistent with the supreme court decision that I/detainee was "entitled to more notice" than was given on 8-1-2023, and with more info how to contest or allow my Habeas petition which was also filed on 8-1-2023 to be adjudicated on the merit. This court cannot thus continue to affirm my Habeas petition is moot. Consistent with supreme court order, " ..courts should approach requests for preliminary relief with care and consideration..." and the lack of care and consideration in my case continue to cause me irreparable harm as indicated in enclosed Case No. 3:24-cv-00349-AR order, collateral harm due to the 8-1-2023 revocation of my order of supervision and the lack of adequate notice-lack of due

process. United States Magistrate Judge ARMISTEAD 5-15-2025 order in my Case No. 3:24-cv-00349-AR: "Gicharu lived in Lowell, Massachusetts from 2003 until Immigration and Customs Enforcement (ICE) deported him to Kenya on August 4, 2023. (Compl. at 11-12, 19.) Gicharu now resides in Kenya. (Id. at 16; Resp. at 3, ECF 23.) While living in Massachusetts, Gicharu worked and paid into social security. (Compl. At 16.) He also received social security benefits for some of that time, including at the time ICE deported him. By letter dated November 11, 2023, the Social Security Administration (SSA) informed him that he was not eligible for benefits as of August 2023, because he was not lawfully present in the United States…CONCLUSION….Because venue is improper in the District of Oregon, defendants' motion to dismiss or transfer (ECF 21) should be GRANTED. Gicharu's Claim 3 should be severed and transferred to the District of Columbia. Claims 1 and 2 should be dismissed without prejudice and with leave to amend to the extent that Gicharu in good faith believes he can cure the jurisdictional and venue deficiencies identified." This order United States Magistrate Judge ARMISTEAD 5-15-2025 order show the irreparable harms of inadequate notice; I'm suffering and this court just a bystander so far to defendant lack of notice and due process.

## CERTIFICATE OF SERVICE

I, Samule Kinuthia Gicharu, hereby affirm that I have mailed on this __17th__ day of June 2025 a copy of this Motion/brief to the above-named defendants and or attorney of record- (defendants attorney), at 1 courthouse way, suite 9200, Boston MA 02210 or Civil Division, Office of Immigration Litigation PO Box 868 Washington, DC 20044

## SIGNATURE

Respectfully filed by Petitioner (Plaintiff-me),

Signed: _SAMUEL GICHARU_____

Samuel K. Gicharu
Pro se litigant
c/o 116 Midland Street,
Lowell, Ma 01851
Cell: 978-761-5214,
Email: Igk532@gmail.com

# SUPREME COURT OF THE UNITED STATES

No. 24A1007

A. A. R. P., ET AL. v. DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES, ET AL.

ON APPLICATION FOR INJUNCTION

[May 16, 2025]

PER CURIAM.

The President has invoked the Alien Enemies Act (AEA), Rev. Stat. §4067, 50 U. S. C. §21, to remove Venezuelan nationals who are members of Tren de Aragua (TdA), a designated foreign terrorist organization. See Presidential Proclamation No. 10903, 90 Fed. Reg. 13033 (2025). Applicants are two detainees identified as members of TdA and a putative class of similarly situated detainees in the Northern District of Texas. All of the alleged TdA members in the putative class are currently being held in U. S. detention facilities. In the application before the Court, the detainees seek injunctive relief against summary removal under the AEA.

I

On April 17, 2025, the District Court denied the detainees' motion for a temporary restraining order (TRO) against summary removal under the AEA. No. 25–cv–59, ECF Doc. 27. The detainees allege that, hours later, putative class members were served notices of AEA removal and told that they would be removed "tonight or tomorrow." ECF Doc. 30, p. 1. On April 18 at 12:34 a.m. central time, the detainees moved for an emergency TRO. See *ibid.* At 12:48 p.m., the detainees moved for a ruling on that motion or a status conference by 1:30 p.m. ECF Doc. 34. At 3:02 p.m., they appealed "the constructive denia[l]" of the emergency TRO

2                    A. A. R. P. *v.* TRUMP

                        Per Curiam

to the Fifth Circuit. ECF Doc. 36, p. 1. The detainees also applied to this Court for a temporary injunction.

　We understood the Government to assert the right to remove the detainees as soon as midnight central time on April 19. The Government addressed the detainees' allegations on April 18 only at an evening hearing before the District Court for the District of Columbia, where the detainees had separately sought relief. The Government guaranteed that no putative class members would be removed that day. Tr. of Proceedings in *J. G. G.* v. *Trump*, No. 25–cv–766, ECF Doc. 93, p. 9. But it further represented that, in its view, removal of putative class members as soon as the next day "would be consistent with" its due process obligations, and it "reserve[d] the right" to take such action. *Id.*, at 26; see *id.*, at 16 (explanation by the court that "tomorrow . . . starts at 12:01 a.m."). Evidence now in the record (although not all before us on April 18) suggests that the Government had in fact taken steps on the afternoon of April 18 toward removing detainees under the AEA—including transporting them from their detention facility to an airport and later returning them to the facility. See Supp. App. to Reply 1a–5a. Had the detainees been removed from the United States to the custody of a foreign sovereign on April 19, the Government may have argued, as it has previously argued, that no U. S. court had jurisdiction to order relief. See Application To Vacate Injunction in *Noem* v. *Abrego Garcia*, No. 24A949 (Apr. 7, 2025), pp. 11–20.

　At 12:52 a.m. eastern time (11:52 p.m. central time), we ordered the Government—in light of all these circumstances—"not to remove any member of the putative class of detainees" in order to preserve our jurisdiction to consider the application. 604 U. S. ___ (2025). We invited the Government to respond to that application after the Fifth Circuit ruled. The Fifth Circuit dismissed the detainees' appeal for lack of jurisdiction and denied their motion for injunction pending appeal as premature, on the ground that

the detainees "gave the [district] court only 42 minutes to act." No. 25–10534, ECF Doc. 14, p. 2. We now construe the application as a petition for writ of certiorari from the decision of the Fifth Circuit. See Reply 15. We grant the petition as well as the application for injunction pending further proceedings, vacate the judgment of the Fifth Circuit, and remand for further proceedings.

## II

The Fifth Circuit erred in dismissing the detainees' appeal for lack of jurisdiction. Appellate courts have jurisdiction to review interlocutory orders that have "the practical effect of refusing an injunction." *Carson* v. *American Brands, Inc.*, 450 U. S. 79, 84 (1981). A district court's inaction in the face of extreme urgency and a high risk of "serious, perhaps irreparable," consequences may have the effect of refusing an injunction. 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3924.1, pp. 174, 180–181 (3d ed. 2012) (quoting *Baltimore Contractors, Inc.* v. *Bodinger*, 348 U. S. 176, 181 (1955)). Here the District Court's inaction—not for 42 minutes but for 14 hours and 28 minutes—had the practical effect of refusing an injunction to detainees facing an imminent threat of severe, irreparable harm. Accordingly, we vacate the judgment of the Court of Appeals.

"[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump* v. *J. G. G.*, 604 U. S. ___, ___ (2025) (*per curiam*) (slip op., at 3) (internal quotation marks omitted). "Procedural due process rules are meant to protect" against "the mistaken or unjustified deprivation of life, liberty, or property." *Carey* v. *Piphus*, 435 U. S. 247, 259 (1978). We have long held that "no person shall be" removed from the United States "without opportunity, at some time, to be heard." *The Japanese Immigrant Case*, 189 U. S. 86, 101 (1903). Due process requires notice that is "reasonably calculated, under all the

circumstances, to apprise interested parties" and that "afford[s] a reasonable time . . . to make [an] appearance." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U. S. 306, 314 (1950). Accordingly, in *J. G. G.*, this Court explained—with all nine Justices agreeing—that "AEA detainees must receive notice . . . that they are subject to removal under the Act . . . within a reasonable time and in such a manner as will allow them to actually seek habeas relief" before removal. 604 U. S., at ___ (slip op., at 3). In order to "actually seek habeas relief," a detainee must have sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief.

The Government does not contest before this Court the applicants' description of the notice afforded to AEA detainees in the Northern District of Texas, nor the assertion that the Government was poised to carry out removals imminently. The Government has represented elsewhere that it is unable to provide for the return of an individual deported in error to a prison in El Salvador, see *Abrego Garcia* v. *Noem*, No. 25–cv–951 (D Md.), ECF Docs. 74, 77, where it is alleged that detainees face indefinite detention, see Application for Injunction 11. The detainees' interests at stake are accordingly particularly weighty. Under these circumstances, notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster. But it is not optimal for this Court, far removed from the circumstances on the ground, to determine in the first instance the precise process necessary to satisfy the Constitution in this case. We remand the case to the Fifth Circuit for that purpose.

To be clear, we decide today only that the detainees are entitled to more notice than was given on April 18, and we grant temporary injunctive relief to preserve our jurisdiction while the question of what notice is due is adjudicated. See *post*, at 13 (ALITO, J., dissenting). We did not on April

19—and do not now—address the underlying merits of the parties' claims regarding the legality of removals under the AEA. We recognize the significance of the Government's national security interests as well as the necessity that such interests be pursued in a manner consistent with the Constitution. In light of the foregoing, lower courts should address AEA cases expeditiously.

## III

The dissent disputes both the Court's jurisdiction and the availability of classwide relief. We do not find its reasoning persuasive.

First, we reject the dissent's characterization of the events that transpired on April 18, which lead it to question our jurisdiction. District courts should approach requests for preliminary relief with care and consideration, see *post*, at 3–4 (ALITO, J., dissenting), but exigent circumstances may impose practical constraints. Preliminary relief is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Lackey* v. *Stinnie*, 604 U. S. ___, ___ (2025) (slip op., at 6) (quoting *University of Tex.* v. *Camenisch*, 451 U. S. 390, 395 (1981)). The purpose of such relief is "merely to preserve the relative positions of the parties" pending further proceedings. *Lackey*, 604 U. S., at ___ (slip op., at 6) (quoting *Camenisch*, 451 U. S., at 395).

In this case, the record before the District Court, although limited, indicated that removals of putative class members were likely imminent. Contra, *post*, at 4–6 (ALITO, J., dissenting). The detainees attached four declarations to their emergency motion for a TRO. In one, for example, an attorney relayed a detainee's report that immigration officers "had informed them that they will be deported either today or tomorrow." ECF Doc. 30-1. In a second, a nonprofit director described conversations with

Per Curiam

family members of detainees and linked to a video of detainees holding notices of removal as evidence that detainees "were being removed." ECF Doc. 30–2.

Importantly, the relevant question for purposes of our jurisdiction is whether, at the time this Court was called upon to intervene, the District Court's inaction had the effect of refusing an injunction. In their application to this Court, the detainees represented that "[m]any individuals [had] already been loaded on to buses, presumably headed to the airport." Application for Injunction 1. Shortly thereafter, the Government represented on the record in federal court that it reserved the right to remove detainees after midnight. We had the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve our jurisdiction over the matter. 28 U. S. C. §1651(a). Now that the Fifth Circuit has ruled, our certiorari jurisdiction also supports review in the ordinary course.

Finally, this Court may properly issue temporary injunctive relief to the putative class in order to preserve our jurisdiction pending appeal.\* Named applicants A. A. R. P. and W. M. M. assert that they are at imminent risk of being classified as alien enemies and removed from the United

---

\*We note that the District Court recently denied class certification as to the detainees' underlying habeas claims challenging the validity of removal under the AEA. See ECF Doc. 67. By its own terms, the District Court's order is "automatically vacated" by our order granting a writ of certiorari. *Id.*, at 2. And in any event, the District Court's order primarily addressed the detainees' ability to challenge the validity of AEA removal on a classwide basis. The application before this Court seeks only to vindicate notice rights on a classwide basis. To the extent the District Court's order addressed due process, see *post*, at 12 (ALITO, J., dissenting) (citing ECF Doc. 67, pp. 29–31, 33, 38–39), the District Court's concerns as to the propriety of classwide relief focused on considerations downstream of the initial notice necessary for detainees to raise any substantive claims against AEA removal, see ECF Doc. 67, pp. 29–31, 33, 38–39.

States, but the record does not indicate that they have received any formal notice of removal under the AEA. See ECF Doc. 38, pp. 5–6. The named applicants, along with putative class members, are entitled to constitutionally adequate notice prior to any removal, in order to pursue appropriate relief. Although the putative class members may ultimately take different steps to protect their own interests in response to such notice, the notice to which they are entitled is the same. And because courts may issue temporary relief to a putative class, see 2 W. Rubenstein, Newberg & Rubenstein on Class Actions §4:30 (6th ed. 2022 and Supp. 2024), we need not decide whether a class should be certified as to the detainees' due process claims in order to temporarily enjoin the Government from removing putative class members while the question of what notice is due is adjudicated.

We recognize that the Government "has agreed to forgo removing the named petitioners pursuant to the AEA while their habeas proceedings are pending." Opposition to Emergency Application 11. But we reject the proposition that a class-action defendant may defeat class treatment, if it is otherwise proper, by promising as a matter of grace to treat named plaintiffs differently. Cf. *FBI* v. *Fikre*, 601 U. S. 234, 241 (2024) (explaining that voluntary cessation of challenged conduct does not moot a claim). And we are skeptical of the self-defeating notion that the right to the *notice* necessary to "actually seek habeas relief," *J. G. G.*, 604 U. S., at \_\_\_ (slip op., at 3), must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice.

\* \* \*

The application for an injunction pending further proceedings is granted. The motion for leave to file a supplemental appendix under seal is also granted. Additionally, applicants suggested this Court treat the application as a

petition for a writ of certiorari; doing so, the petition is granted. The judgment of the Fifth Circuit is vacated, and the case is remanded to the Fifth Circuit. In resolving the detainees' appeal, the Fifth Circuit should address (1) all the normal preliminary injunction factors, including likelihood of success on the merits, as to the named plaintiffs' underlying habeas claims that the AEA does not authorize their removal pursuant to the President's March 14, 2025, Proclamation, and (2) <u>the issue of what notice is due, as to the putative class's due process claims against summary removal</u>. The Government is enjoined from removing the named plaintiffs or putative class members in this action under the AEA pending order by the Fifth Circuit and disposition of the petition for a writ of certiorari, if such writ is timely sought. Should the petition for a writ of certiorari be denied, this order shall terminate automatically. In the event the petition for a writ of certiorari is granted, the order shall terminate upon the sending down of the judgment of this Court.

The Government may remove the named plaintiffs or putative class members under other lawful authorities.

*It is so ordered.*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SAMUEL KINUTHIA GICHARU,

        Plaintiff,

    v.

MERRICK GARLAND, *Attorney General of the United States*, MARTIN O'MALLEY, *Commissioner of the Social Security Administration (SSA)*, DAVID T. WESLING, *Assistant Field Office Director for U.S. DHS, ICE, Burlington, MA*, SUSAN DIBBINS, *Chief USCIS Administrative Appeals Office*,

        Defendants,

    v.

UNITED STATES OF AMERICA,

        Respondent.

Case No. 3:24-cv-00349-AR

**FINDINGS AND RECOMMENDATION**

**ARMISTEAD, United States Magistrate Judge**

Plaintiff Samuel Kinuthia Gicharu, representing himself, brings this action against officers of the United States government (defendants), alleging that defendants wrongfully stopped his social security benefits and determined that he was overpaid (Claim 1); handcuffed him for long durations in 2015, 2016, 2018, and 2023—harming his right wrist and thumb (Claim 2); and wrongfully denied his request to be considered a special immigrant religious worker (Claim 3). (Compl., ECF 1.)

Defendants move to dismiss or transfer Gicharu's claims based on improper venue, lack of subject matter jurisdiction, and failure to state a claim on which relief can be granted. (MTD, ECF 21.) The court agrees that it lacks subject-matter jurisdiction over Claim 1 and that venue is improper as to all of Gicharu's claims. Each of Gicharu's claims must therefore be dismissed or transferred.

## BACKGROUND

Gicharu lived in Lowell, Massachusetts from 2003 until Immigration and Customs Enforcement (ICE) deported him to Kenya on August 4, 2023. (Compl. at 11-12, 19.) Gicharu now resides in Kenya. (*Id.* at 16; Resp. at 3, ECF 23.)

While living in Massachusetts, Gicharu worked and paid into social security. (Compl. at 16.) He also received social security benefits for some of that time, including at the time ICE deported him. By letter dated November 11, 2023, the Social Security Administration (SSA) informed him that he was not eligible for benefits as of August 2023, because he was not lawfully present in the United States. On January 2, 2024, the SSA informed Gicharu by letter that the benefits he had received between August and December 2023 ($6,416.00) were

## CONCLUSION

Because venue is improper in the District of Oregon, defendants' motion to dismiss or transfer (ECF 21) should be GRANTED. Gicharu's Claim 3 should be severed and transferred to the District of Columbia. Claims 1 and 2 should be dismissed without prejudice and with leave to amend to the extent that Gicharu in good faith believes he can cure the jurisdictional and venue deficiencies identified.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: May 15, 2025

/s/ Jeff Armistead
JEFF ARMISTEAD
United States Magistrate Judge




**UNITED STATES POSTAL SERVICE** — Retail

P  US POSTAGE PAID
$11.80
Origin: 01854
05/17/25
2441480853-15

PRIORITY MAIL®

3 Lb 15.50 Oz
RDC 03

EXPECTED DELIVERY DAY: 05/20/25

C079

SHIP TO:
STE 2500
1 COURTHOUSE WAY
BOSTON MA 02210-3004

USPS TRACKING #



9505 5105 4913 5137 1503 95



**UNITED STATES POSTAL SERVICE** — PRIORITY MAIL
VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

FROM:
SAMUEL K. GICHARU
C/O ISAAC KINUTHIA
116 MIDLAND STREET,
LOWELL
MA 01851

TO: CLERK
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT,
1 COURTHOUSE WAY, SUITE 2500
BOSTON,
MA 02210



Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE